In re Jonathan Paul BALASKI, Debtor.

Jonathan Paul Balaski, Plaintiff,

v.

Educational Credit Management Corp., Defendant.

Bankruptcy No. 98–63306.
Adversary No. 01–6135.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 28, 2002.

396

Donald M. Miller, Canton, OH, for Plaintiff-debtor.

Matthew J. Thompson, Nobile, Needleman & Thompson, L.L.C., Columbus, OH, for Defendant.

**MEMORANDUM OF DECISION**

RUSS KENDIG, Bankruptcy Judge.

This adversary proceeding arises in the chapter 13 proceeding of debtor Jonathan Paul Balaski. On August 28, 2001, debtor filed a complaint seeking a determination that a student loan obligation owing Educational Credit Management Corporation (hereafter "ECMC") is dischargeable pursuant to 11 U.S.C. § 523(a)(8). ECMC answered the complaint and alleged that debtor cannot prove repayment of the loans is an undue hardship as required under section 523(a)(8). A trial in this proceeding was held on January 28, 2002. Donald M. Miller represented the debtor and Matthew J. Thompson represented defendant ECMC.

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). In accordance with Federal Rule of Bankruptcy Procedure 7052, the court's findings of facts and conclusions of law are set forth in this opinion.

**I. Background**

The court adopts plaintiff's findings of fact in their entirety. The following is an unedited quotation of the findings filed by plaintiff:

1. The debtor filed Chapter 13 on October 13, 1998 and among other creditors, scheduled a student loan claim owing to United Student Aid Funds (USAF).[1]

2. The debtor's original Plan contained a hardship discharge provision which was objected to by the student loan claimant.

3. The Plan was eventually confirmed without the offending hardship discharge provision.[2]

4. The claim of USAF was duly assigned to Educational Management Credit Corp. (ECMC) who now is the real party in interest.

5. The debtor's Plan provided for payments of $10.00 per month for six months and $50.00 per month thereafter until the Plan was completed.

6. The debtor has made all payments required to complete the Plan.

7. But for discharge, the debtor owes about $26,934.99 plus interest and collection costs to ECMC.

8. The debtor is forty-six (46) years old, suffers from a severe physical deformity and other ailments[3] which prevent him from obtaining meaningful employment.

9. The debtor graduated from high school in 1974 but has no education beyond that, but for the time he spent at Stark Technical College in 1984–1986.

10. The debtor took Computer Science at Stark Technical College but never finished.

11. The debtor's job skills are janitor, laborer, bench helper and material handler.

12. The debtor was last employed at The Timken Company in 1991.

13. The debtor has been on Social Security Disability (SSD) since about 1991 and currently gets $1,134.00 per month. He has no other income.

14. The debtor lives with his girlfriend, Jean Verro, who has her own bills but does help out on expenses.

15. The debtor owns next to nothing. He has no real estate. He has furniture worth about $1,000.00, a 1986 Ford Tempo (beater) worth about $50.00.

16. The debtor has no investments, retirement plans or meaningful savings. Essentially, the debtor lives from "check to check."

17. The debtor owes $1,200.00[4] in medical bills incurred after his Chapter 13 and upon which he makes payments.

18. The debtor has expenses which are equal to or exceed his income.

19. The debtor's living expenses are reasonable. There is no extra money nor is there sufficient money to pay ECMC.

20. The debtor's lifestyle can best be described as very minimal.

---

1. USAF was listed as a creditor receiving "notice only." The debt at issue was listed on Schedule F under "Payco Gen American Cr" in the amount of $23,075.

2. The plan attached to the order of confirmation contains the offending provision, but a stipulated order entered December 28, 1998 modifies the plan to provide that the student loan debt is "subject to a later determination by this Court of dischargeability according to law."

3. The physical deformity and ailments are explained further in the analysis portion of the decision.

4. At trial, debtor testified to owing more than $1,500.00 in post-petition medical bills.

21. The debtor is trying to save money to buy a better car. Even if this money were paid to ECMC, the same would not come close to paying interest.

22. The debtor made payments to the student loan claimant through his Chapter 13 proceeding.

23. The debtor has done all he can do to lessen his lifestyle and expenses.

24. The debtor's disability will obviously continue for his entire life and consequently his ability to obtain meaningful employment is virtually nil.

25. To just pay interest to ECMC (8%) would cost debtor about $180.00 per month.

26. The debtor has no money to pay ECMC anything, let alone over $180.00 per month.

27. The debtor has incurred legal fees in the prosecution of this complaint in the sum of $3,500.00. He cannot afford to pay this.

## II. Discussion

In the complaint, debtor contends that the student loan obligation is dischargeable under 11 U.S.C. § 523(a)(8) because it would be an undue hardship to require him to repay the student loans. Defendant denies that debtor meets the undue hardship standard under 11 U.S.C. § 523(a)(8). According to defendant, debtor has failed to maximize his income and minimize his expenses, has not made good faith efforts to repay the debt, and has not explored the alternate payment plans which are available.

■ Section 523(a)(8) provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Debtor bears the burden of proving that repayment constitutes an undue hardship. *See Dolph v. Pennsylvania Higher Educ. Assistance Agency (In re Dolph)*, 215 B.R. 832 (6th Cir. BAP 1998).

■ The Sixth Circuit Court of Appeals had opportunity to review the dischargeability of student loan debts under section 523(a)(8) on multiple occasions. *See, e.g., Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir.1998); *United Student Aid Funds, Inc. v. Paolini (In re Paolini)*, 1997 WL 476515 (6th Cir.1997) (unpublished); *Rice v. United States (In re Rice)*, 78 F.3d 1144 (6th Cir.1996); *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994). Although the court has mentioned several different tests in connection with a section 523(a)(8) analysis, it has not adopted one particular test, choosing instead to look at a variety of factors. *See Hornsby*, 144 F.3d 433, 437 (6th Cir. 1998); *Cheesman*, 25 F.3d 356 (6th Cir. 1994). The Sixth Circuit has frequently identified three factors, commonly referred to as the *"Brunner* test," which serve as a touchstone for an undue hardship analysis. *See id.* Under the *Brunner* test, a debtor must show

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period ... and (3) that the debtor has made good faith efforts to repay the loans. *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987). In addition to the three *Brunner* factors, the Sixth Circuit, in *Hornsby*, sanctioned review of "the amount of debt ... as well as the rate at which interest is accruing" and "the debtor's claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents." *Hornsby*, 144 F.3d at 437 (citing *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996)). These factors serve as the basis for determining whether repayment of a student loan obligation creates an undue hardship on a debtor.

■■■■■ The record reveals that this matter is so lopsided as a matter of law and fact that the court should not waste further resources detailing the case. Any interested person or reviewing court needs only to listen to Mr. Balaski's credible, concise and compelling testimony. Mr. Balaski receives $1,134.00 per month in Social Security Disability (hereafter "SSD"). He is profoundly physically challenged and has received SSD since 1991. He has neither wrists, elbows, normal length arms nor fully functioning hands.

His hip is degenerating. His spine is fusing. His shoulder is destroyed due to overuse arising from the absence of function in his arms and hands. Everyday activities are time consuming and challenging. He lives with perpetual discomfort. These are only the high points of what is set forth in grim detail in his medical records and testimony.

Mr. Balaski has only the most meager expenses and his expenses continue to increase as he incurs new medical bills. His $1,134.00 expense budget contained no allowances for food or recreation, which are paid by a live-in friend.[5] Debtor's expenses clearly exceed his income. He has fallen behind since completing his chapter 13 plan. Based upon his income and expenses, he could not even make a mark in the interest accruing on the student loan obligation, to say nothing of the principal. He has virtually no assets.

He worked those years of his life when he was able. His educational training, computer training in the 1980s, is worthless today. Fifteen minutes into his testimony, discomfort forced him to request permission to stand while testifying. It is highly unlikely that Mr. Balaski could obtain gainful employment in light of the multiple medical problems he suffers. The limits of his physical condition are a two-edged sword: they preclude him an opportunity to increase his income while at the same time creating additional medical expense.

The court finds that the debtor cannot maintain a minimal standard of living if forced to repay the loans in whole or in part.[6] This state of affairs is likely to

---

**5.** According to debtor's testimony, which the court finds credible, his friend earns approximately $700.00/month as an STNA and also receives a $492.00/month widow's benefit. According to an uncontroverted exhibit, her income pays for "car expenses, food, recre-

ation, etc." Debtor's testimony further revealed that she has no savings accounts and is not able to save anything after paying living expenses.

**6.** In the Sixth Circuit, if undue hardship does not exist, a student loan may nonetheless be

persist, or worsen, for a significant portion of the repayment period, indeed, for all of the foreseeable future. He has made good faith efforts to repay the loans through the course of his chapter 13 plan.

Defendant argues an alternate repayment program, specifically the income contingent repayment program, offers repayment options which would not work an undue hardship on debtor. The court disagrees. Alternate payment plans are just one factor in a lengthy list of factors which can be considered. *See, e.g., Long v. Educational Credit Mgmt. Corp. (In re Long),* 271 B.R. 322, 332 (8th Cir. BAP 2002); *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford),* 269 B.R. 673, 677 (8th Cir. BAP 2001). Looking at debtor's finances and prospects, the court does not see that debtor's financial situation is going to improve, in the next year or twenty-five years, to provide for any meaningful repayment of the debt. Debtor lives modestly and is unable to meet all expenses with his income, making participation in any repayment plan an undue hardship. While defendant may believe holding debtor hostage for twenty-five years to debt and compounding interest is not an undue hardship, the court does not accept this view.

Mr. Balaski meets any test of dischargeability known to exist pursuant to 11 U.S.C. § 523(a)(8). Mr. Balaski meets any conceivable test of dischargeability that could be imposed by a civilized society.

### III. Conclusion

The debtor maintains a minimal standard of living without forcing repayment of the student loan. His plight is a direct result of physical disabilities which will persist for the repayment term of the obli-

gation. Mr. Balaski made a good faith effort to pay what he could on the obligation through his chapter 13 plan. He has minimal expenses, yet continues to fall further behind because of additional medical bills. The court finds that repayment, under a standard repayment plan or alternate repayment plan, of the student loan obligation owing ECMC would work an undue hardship on the debtor. The debt is discharged pursuant to 11 U.S.C. § 523(a)(8).

Hopefully experiencing this unnecessary trial is the last indignity visited upon Mr. Balaski by the legal system.

An order in accordance with this decision will issue forthwith.

---

eligible for a partial discharge. *Hornsby,* 144 F.3d at 438–9. In this case, the court finds that undue hardship does exist, thereby eliminating the necessity of any discussion on partial dischargeability.