*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to 6th
Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

File Name: 14b0005n.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:<br>COLLEEN RENEE TRUDEL,<br><br>Debtor.<br>_____<br><br>COLLEEN RENEE TRUDEL,<br><br>   Plaintiff - Appellant,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION, et al.,<br><br>   Defendants - Appellees.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 13-8049 |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio
Case No. 12-5269

Decided and Filed: August 8, 2014

Before: HUMPHREY, LLOYD, AND PRESTON, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Erin E. Brizius, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, James
L. Bickett, UNITED STATES ATTORNEY'S OFFICE, Akron, Ohio, for Federal Appellee. Scott

W. Paris, KEITH D. WEINER & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellee University of Akron.  Colleen Renee Trudel, Uniontown, Ohio, pro se.

———————————

## OPINION

———————————

**JOAN A. LLOYD**, Bankruptcy Appellate Panel Judge.  Plaintiff-Debtor Colleen Renee Trudel (the "Debtor") appeals, pro se, the October 28, 2013 order of the Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court") determining that the Debtor was not entitled to an undue hardship discharge of her student loans under 11 U.S.C. § 523(a)(8).  For the reasons that follow, the Panel affirms the Bankruptcy Court's order.

## ISSUES

In this Appeal, the Panel must consider whether the Debtor's student loans are eligible for discharge under the "undue hardship" standard of 11 U.S.C. § 523(a)(8).

## JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). "Determinations of dischargeability are final orders for purposes of appeal." *Lowry v. Nicodemus* (*In re Nicodemus*), 497 B.R. 852, 854 (B.A.P. 6th Cir. 2013) (citing *Cash Am. Fin. Servs., Inc. v. Fox* (*In re Fox*), 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007)).

Dischargeability determinations, such as whether student loans pose an undue hardship, are conclusions of law reviewed de novo.[1] *Cheesman v. Tennessee Student Assistance Corp.* (*In re Cheesman*), 25 F.3d 356, 359 (6th Cir. 1994); *Hogan v. George* (*In re George*), 485 B.R. 478, 2013 WL 135274, at *1 (B.A.P. 6th Cir. 2013) (table). Under a de novo standard of review, the appellate court determines the law at issue " 'independently of, and without deference to, the trial court's determination.' " *Palmer v. Washington Mut. Bank* (*In re Ritchie*), 416 B.R. 638, 641 (B.A.P. 6th Cir. 2009) (quoting *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., L.L.C.* (*In re Brice Rd. Devs., L.L.C.*), 392 B.R. 274, 278 (B.A.P. 6th Cir. 2008)). However, "[t]he Panel must affirm the underlying factual determinations unless they are clearly erroneous." *Hart v. Molino* (*In re Molino*), 225 B.R. 904, 906 (B.A.P. 6th Cir. 1998). "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (citation omitted) (internal quotation marks omitted). "If two views of the evidence in a case are permissible, the choice between those views made by the fact finder is not clearly erroneous." *Michigan v. City of Allen Park*, 954 F.2d 1201, 1213 (6th Cir. 1992) (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S. Ct. 177, 179 (1949)).

## FACTS

The Debtor, a fifty-five year old single woman, filed a voluntary chapter 7 bankruptcy petition on June 15, 2012. In Schedule F of her petition, the Debtor listed debts of $129,518.91 for

---

[1] Cases from this circuit do not state the standard of review for each prong explicitly, but do discuss existence or absence of clear error, apparently treating each prong as a finding of fact. *See, e.g.*, *Hertzel v. Educ. Credit Mgmt. Corp.* (*In re Hertzel*), 329 B.R. 221, 234 (B.A.P. 6th Cir. 2005) ("The bankruptcy court's finding that the Debtor met the good faith prong of the *Brunner* test is also not clearly erroneous."). The Ninth Circuit Bankruptcy Appellate Panel has delved into the prong-by-prong standard of review question and stated another position: "[T]he three independent prongs are [] mixed questions" of law and fact "requiring de novo review" on appeal. *Roth v. Educ. Credit Mgmt. Corp.* (*In re Roth*), 490 B.R. 908, 916 (B.A.P. 9th Cir. 2013). In this case, the distinction between these standards of review makes no difference as to the result.

educational loans.[2]   The Debtor incurred these loans (the "Student Loans"), while attending the University of Akron between 1988 and 1996, from the United States Department of Education ("USDOE") and the University of Akron (collectively, the "Creditors").  The Student Loans have been in default since 1996.

On October 3, 2012, the Debtor, pro se, initiated the underlying adversary proceeding against the Creditors requesting an undue hardship discharge of the Student Loans under 11 U.S.C. § 523(a)(8).  The Creditors answered the Debtor's complaint, and the parties completed discovery and stipulated to the admissibility of employment and medical records submitted by the Debtor.  Prior to trial, the Debtor submitted a lengthy Proposed Findings of Fact and Conclusions of Law, in which she described a history of medical problems and unsuccessful educational and professional endeavors.  The Creditors submitted several exhibits of their own.  The case went to trial on May 20, 2013.  At the trial, the Bankruptcy Court heard testimony from the Debtor's mother, Betty Daugherty, and the Debtor's son, Daniel Trudel. [3]

The USDOE and the Debtor also filed post-trial briefs that addressed the Debtor's obligations under the USDOE's Income Contingent Repayment Program (the "ICRP").[4]   The

---

[2]There is some discrepancy in the filings as to whether this amount is correct.  The exact amount is immaterial to the resolution of this appeal.

[3]The Record on Appeal does not contain a transcript of the trial.  According to the Debtor's Reply Brief, she "could not afford the $698.00 required for transcripts of the Trial." Appellant's Reply Br. at 10, March 3, 2014, ECF No. 23.

[4]As understood by the Sixth Circuit Court of Appeals:

The Income Contingent Repayment Program permits a student loan debtor to pay twenty percent of the difference between his adjusted gross income and the poverty level for his family size, or the amount the debtor would pay if the debt were repaid in twelve years, whichever is less. Under the program, the borrower's monthly repayment amount is adjusted each year to reflect any changes in these factors. The borrower's repayments may also be adjusted during the year based on special circumstances. *See* 34 C.F.R. § 685.209(c)(3). At the end of the twenty five year payment period, any remaining loan balance would be cancelled by the Secretary of Education. However, the amount discharged would be considered taxable income.

USDOE claimed that the Debtor's medical co-pays could be considered in computing her required monthly payments if she were to enter into the ICRP. Post-Trial Brief of the United States of America, June 11, 2013, ECF No. 24, at 7. The Debtor responded that her monthly ICRP payments would amount to $53.00 or less. She arrived at this figure using her salary from a thirty-two hour work week. She also contended that her medical co-pays might not be taken into account should she enroll.

On October 28, 2013, the Bankruptcy Court issued a Memorandum Opinion in which it determined that the Debtor was not entitled to a discharge of her educational loans. The Bankruptcy Court first listed a number of findings of fact, as follows:

1. Plaintiff-debtor, through counsel, filed a voluntary chapter 7 bankruptcy petition on June 15, 2012.

2. On her Schedule E - Creditors Holding Unsecured Priority Claims, plaintiff-debtor lists $24,000 in taxes. On her Schedule F - Creditors Holding Unsecured Nonpriority Claims, plaintiff-debtor lists $248,059.16, including $129,518.91 for educational loans. Debtor does not list any real property on her Schedule A and no secured debts on her Schedule D.

3. Plaintiff-debtor is obligated to the USDOE for educational obligations in an amount between $106,595.88 and $130,000.00. Plaintiff-debtor is also obligated to the University of Akron for educational obligations in an amount between $13,000.00 and $24,352.54. (The obligations to the USDOE and the University of Akron will be collectively referred to as the "Student Loans"). The Student Loans were incurred by plaintiff-debtor in attending the University of Akron. Plaintiff-debtor did not receive a degree from the University of Akron.

4. Plaintiff-debtor has never made any voluntary payments on her Student Loans. The only payments received by the United States came from income tax refund intercepts.

5. Plaintiff-debtor is 54 years old and employed as a Credit/Merchandise Specialist for Sterling, Inc. ("Sterling").

---

*Tirch v. Pa. Higher Educ. Assistance Agency* (*In re Tirch*), 409 F.3d 677, 682 (6th Cir. 2005) (quoting *Korhonen v. Educ. Credit Mgmt. Corp.* (*In re Korhonen*), 296 B.R. 492, 496 (Bankr. D. Minn. 2003)).

6. Plaintiff-debtor has no dependents.

7. Plaintiff-debtor is paid $12.65 per hour plus overtime, when applicable. Plaintiff-debtor earned $19,680.08 from Sterling in 2012.

8. Plaintiff-debtor lives in a rented residence and resides there with her son and mother. On her Amended Schedule J - Current Expenditures of Individual Debtor(s), plaintiff-debtor reports $600.00 for monthly rent.

9. During trial plaintiff-debtor's mother testified that monthly rent for their residence was $750.00 and that she contributes to the rent in an unspecified amount. Plaintiff-debtor's son testified that he also contributes $400 per month in rent. Mr. Trudell [sic] also testified that it was his intention to move from Ohio so there is a possibility that his contribution to rent will not continue in the future.

10. Plaintiff-debtor suffers from several medical conditions including chronic bronchitis and the beginning stages of emphysema. Plaintiff-debtor also suffers from chronic neck and back pain.

11. In the opinion of her treating physician, plaintiff-debtor is not permanently disabled, is able to perform her job functions at Sterling, is capable of working 4 days a week for 8 hours each day and will not be incapacitated for a single continuous period of time due to her medical condition, including any time for treatment and recovery. USDOE Ex. C and D.

12. The treating physician also opined that it will be medically necessary for plaintiff-debtor to be absent from work during "flare-ups" in her medical condition, that such "flare-ups" would likely occur one time every six months and would last for 3 to 4 days per episode. USDOE Ex. C.

13. Despite suffering from chronic bronchitis and the beginning stages of emphysema, plaintiff-debtor still occasionally smokes cigarettes.

14. The United States offered plaintiff-debtor a discharge from the one time income tax responsibility arising from a loan forgiveness at the conclusion of an ICRP. Plaintiff-debtor refused this offer and chose not to participate in an ICRP because of her concern that enrolling in the program could impair her ability to obtain future credit.

Mem. Op. at 4-6, *Trudel v. United States Dep't of Educ*. Adv Proc. No. 12-05269 (Bankr. N.D. Ohio October 28, 2013), ECF No. 29 (footnotes omitted). The same day, the Bankruptcy Court entered a judgment finding that the Debtor was not entitled to an undue hardship discharge.

The Bankruptcy Court did not make any finding of fact as to whether the Debtor would be able to earn a higher income in the future. According to the Bankruptcy Court, "[t]here was no evidence at trial regarding whether any more lucrative employment opportunities were available to plaintiff-debtor at Sterling or whether, in her current position, plaintiff-debtor could expect to earn more than her current hourly rate." Mem. Op. at 10, ECF No. 29. Similarly, the Bankruptcy Court made no finding of fact as to what the Debtor would have to pay every month were she to enroll in the ICRP. The Bankruptcy Court described the issue of the Debtor's monthly ICRP payments as follows:

> During closing arguments, plaintiff-debtor asserted that she would be obligated to pay at least $54 per month under the ICRP. Given that such assertion was not supported by any evidence, the Court left the record open to allow all parties to file post-trial briefs to address the issue . . . . In her post-trial pleading plaintiff-debtor references her Exhibit 20 as evidence of an obligation to pay $54 per month. That document consists of 6 pages of what appear to be plaintiff-debtor's calculations of what she might have to pay under various repayment programs offered by the United States. No direct testimony on this exhibit was offered at trial and the Court does not find it probative on the matter of what, if anything, plaintiff-debtor would be obligated to pay under the ICRP.

Mem. Op. at 12 n.4, ECF No. 29.

After setting forth its findings of fact, the Bankruptcy Court discussed the undue hardship standard for the discharge of student loans and applied the three-part *Brunner* test to the Debtor's case. Under the *Brunner* test, a debtor must prove three elements in order to qualify for an undue hardship discharge of educational loans. *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987). The Bankruptcy Court concluded that the Debtor had not satisfied all three prongs of the test. The court found she had satisfied the first "minimal standard of living" prong but had failed to satisfy the second "additional circumstances" and the third "good faith" prongs of the *Brunner* test. The Debtor filed a timely Notice of Appeal on November 8, 2013.

**DISCUSSION**

The Bankruptcy Code is especially exacting with regard to the repayment of student loans made, insured, or guaranteed by a governmental unit. Section 523(a)(8) of the Bankruptcy Code makes such student loan debt nondischargeable in bankruptcy, unless excepting the debt from discharge "would impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8).

The Bankruptcy Code does not define precisely what "undue hardship" means. Instead, the case law has developed tests that provide that definition. The test employed by the majority of courts, including the Sixth Circuit, is the *Brunner* test. *See Oyler v. Educ. Credit Mgmt. Corp.* (*In re Oyler*), 397 F.3d 382, 385 (6th Cir. 2005) (adopting *Brunner* test in the Sixth Circuit). Under the *Brunner* test, a debtor must prove the following three elements in order to qualify for an undue hardship discharge of educational loans:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. "It is the debtor's burden to establish the existence of each of these elements by a preponderance of the evidence." *Grant v. United States Dep't of Educ.* (*In re Grant*), 398 B.R. 205, 209 (Bankr. N.D. Ohio 2008) (citing *Pa. Higher Educ. Assistance Agency v. Faish* (*In re Faish*), 72 F.3d 298, 306 (3d Cir. 1996)).

Neither party has challenged the Bankruptcy Court's finding that the Debtor satisfied the first prong of the *Brunner* test. Accordingly, the Panel will focus on the second, "additional circumstances," and the third, "good faith" prongs.

8

*a.* *Additional Circumstances*

Under the second prong of the *Brunner* test, a debtor who has proven that she cannot maintain a minimal standard of living if forced to repay her student loans must show "that additional circumstances exist indicating that this state of affairs is likely to persist . . . ." *Brunner*, 831 F.2d at 396. Such additional circumstances "may include, but are not limited to, 'illness, disability, a lack of useable job skills, or the existence of a large number of dependents.' " *Barrett v. Educ. Credit Mgmt. Corp.* (*In re Barrett*), 487 F.3d 353, 359 (6th Cir. 2007) (citing *Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 385 (6th Cir. 2005)). The circumstances at issue must have such a damaging impact on the debtor's earning capacity or financial condition that they indicate a "certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Oyler*, 397 F.3d at 386 (quoting *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993)).

A debtor claiming that a medical condition indicates a "certainty of hopelessness" must "precisely identify her problems and explain how her condition would impair her ability to work in the future." *Tirch v. Pa. Higher Educ. Assistance Agency* (*In re Tirch*), 409 F.3d 677, 681 (6th Cir. 2005). "[T]he mere existence of a medical condition, no matter the severity, is insufficient to form the basis of [an] undue hardship discharge. Instead, a strong nexus between the medical condition and its adverse effect on the debtor's terms of employment (specifically, a debtor's income) must be shown." *Morrow v. U.S. Dep't of Educ.* (*In re Morrow*), 366 B.R. 774, 778 (Bankr. N.D. Ohio 2007) (citing *Swinney v. Academic Fin. Servs.* (*In re Swinney*), 266 B.R. 800, 805 (Bankr. N.D. Ohio 2001). Furthermore, while corroborating expert testimony is not necessarily required, *Barrett*, 487 F.3d at 361, a debtor must still provide probative evidence as to the nexus between her condition and her inability to earn enough income to pay off her loan:

> To establish a nexus, mere speculation will not suffice; for everyone, there exists a possibility that a medical condition will arise that will adversely affect a person's terms of employment. Rather, a debtor must come forth with evidence showing that they presently have a medical condition sufficiently debilitating to affect their ability to maintain employment, and that such a condition is unlikely to improve.

9

*Lowe v. ECMC* (*In re Lowe*), 321 B.R. 852, 859 (Bankr. N.D. Ohio 2004) (internal citations omitted).

The Debtor failed to persuade the Bankruptcy Court that her medical conditions were severe enough to satisfy the "additional circumstances" prong of the *Brunner* test. According to the Bankruptcy Court, "the evidence presented at trial demonstrates that [the Debtor's medical conditions] do not prevent her from performing her job functions at Sterling." Mem. Op. at 9, ECF No. 29. The Court explained its view of the Debtor's medical condition as follows:

> Plaintiff-debtor's evidence goes to support her subjective lay opinion that she suffers from medical conditions that impair her ability to work. However, such evidence must be weighted against the opinion of the plaintiff-debtor's treating physician which concludes that plaintiff-debtor's medical conditions do not impair her ability to work, *see* USDOE Ex. C and D. In so doing, the Court cannot find that plaintiff-debtor's evidence outweighs that of her treating physician.

Mem. Op. at 10, ECF No. 29. Noting an absence of evidence regarding whether the Debtor could obtain more lucrative employment, the Bankruptcy Court went on to state that "[w]hile it is true that plaintiff-debtor's present income is insufficient to enable her to pay the Student Loans and still maintain a minimal standard of living, the Court has not been presented with enough evidence to warrant finding a 'certainty of hopelessness.' " Mem. Op. at 10, ECF No. 29.

The Debtor takes issue with the Bankruptcy Court's factual finding that her medical conditions do not prevent her from working. According to the Debtor, the Bankruptcy Court gave excessive weight to evidence that supported the conclusion that she could work, while failing to consider evidence that supported the opposite conclusion. A review of the record, however, indicates that the Bankruptcy Court did not commit clear error in finding as it did.

The evidence cited by the Bankruptcy Court consists of two exhibits filed by the USDOE. One is a U.S. Department of Labor form entitled "Certification of Health Care Provider for Employee's Serious Health Condition Family and Medical Leave Act," dated January 30, 2013. USDOE Ex. C, Dec. 18, 2013, ECF NO. 43-1. The other is a Sterling Jewelers, Inc. form entitled

10

"Attending Physician's Statement Workplace Restrictions/Accommodations" (the "Statement of Workplace Restrictions"), also dated January 30, 2013. USDOE Ex. D, Dec. 18, 2013, ECF No. 43-1. In both of these documents, doctors treating the Debtor state that the Debtor can work for eight hours a day, four days a week. The Statement of Workplace Restrictions describes the work restriction as temporary, to last until May 15, 2013.

The Debtor argues that the Bankruptcy Court overlooked other evidence that, she claims, supports the conclusion that her medical conditions impair her ability to work and constitute "additional circumstances" under *Brunner*. The Debtor cites (1) various medical records and test results describing the severity and degenerative nature of her conditions; (2) a collection of her pay-stubs dating from between December 2012 and March 2013 that allegedly show her failing to maintain a thirty-two hour work week due to her medical conditions; and (3) a "Symptom Journal" dating from between November 2012 and April 2013 in which the Debtor recorded her daily incidents of pain and stress, including those instances when pain and stress forced her to leave work. These documents do not undercut the evidence relied upon by the Bankruptcy Court. The medical records and test results cited by the Debtor contain a wealth of information regarding the nature and severity of her ailments, but none contain statements contradicting or differing from the medical opinion contained in the USDOE's exhibits: that the debtor can work, albeit with a temporary thirty-two hour week restriction. As for the pay-stub collection and Symptom Journal, these exhibits might support a finding that the Debtor's conditions impaired her ability to work, but neither contains the opinion of a medical professional and are not entitled to more weight than the USDOE's doctor-prepared exhibits. Given its discretion as the fact-finder, the Bankruptcy Court did not clearly err when it relied upon the USDOE's exhibits to find that the Debtor's conditions did not prevent her from working. *See Michigan v. City of Allen Park*, 954 F.2d 1201, 1213 (6th Cir. 1992) ("If two views of the evidence in a case are permissible, the choice between those views made by the fact finder is not clearly erroneous.").

11

The Debtor also disputes the Bankruptcy Court's finding that there was no evidence that her conditions precluded her from obtaining more lucrative employment. She claims that the facts of her medical condition, age, educational attainment, and work history constitute just such evidence. According to the Debtor, these facts support the conclusion that her "future employment prospects are limited and advancement highly unlikely." Appellant's Br. at 20, ECF No. 15.

The Bankruptcy Court's view of the evidence on this issue was not mistaken. The record does not contain documents or testimony relating to whether or not the Debtor could earn a higher salary at Sterling or some other employer. The Debtor did not present evidence, for example, that her health, age, or educational attainment level precluded her from advancing within Sterling or obtaining employment elsewhere. Student-loan debtors may present such evidence in undue hardship cases, allowing courts to make findings as to the limits of a debtor's earning potential. *See, e.g.*, *Nixon v. Key Educ. Res.* (*In re Nixon*), 453 B.R. 311, 321 (Bankr. S.D. Ohio 2011) ("The highest salary [debtor] could possibly earn given his educational background and experience would be as a librarian . . . making approximately $40,000 annually."); *Lebovits v. Chase Manhattan Bank* (*In re Lebovits*), 223 B.R. 265, 269 (Bankr. E.D.N.Y. 1998) (stating that debtor "is currently commanding the highest salary that he can expect to earn" and that debtor "has no expectations of pay raises other than cost-of-living adjustments"). Though the Debtor presented evidence of her age, background, and health conditions, she did not present evidence that explained how her circumstances affected her earning potential.

To prove "additional circumstances," the Debtor had to establish that her medical issues precluded her from improving her financial condition. Instead, the evidence showed that her conditions allowed her to continue working, albeit at a temporarily reduced schedule. And no evidence was presented regarding her potential future income. Therefore, the Panel agrees with the Bankruptcy Court's conclusion that the Debtor failed the "additional circumstances" prong of the *Brunner* test.

12

b.      *Good Faith*

The third prong of the *Brunner* test requires that the debtor show that she has made a good faith effort to repay her student loans. *Brunner*, 831 F.2d at 396. "Good faith, in this context, is essentially an inquiry into whether the debtor has consciously or irresponsibly disregarded his or her repayment obligation—or, instead, whether there is some justification for the debtor's default and ongoing inability to repay the loan." *Crawley v. Educ. Credit Mgmt. Corp.* (*In re Crawley*), 460 B.R. 421, 444 (Bankr. E.D. Pa. 2011). Courts consider a number of factors to determine good faith, including the debtor's repayment history and her efforts to obtain employment, maximize income, minimize expenses, and participate in alternative repayment programs, though no single factor is dispositive. *See, e.g.*, *Benjumen v. AES/Charter Bank* (*In re Benjumen*), 408 B.R. 9, 21-22 (Bankr. E.D. N.Y. 2009). *See also Hertzel v. Educ. Credit Mgmt. Corp.* (*In re Hertzel*), 329 B.R. 221, 233-34 (B.A.P. 6th Cir. 2005) (quoting *Norasteh v. Dept. of Educ.* (*In re Norasteh*), 311 B.R. 671, 676 (Bankr. S.D.N.Y. 2004)).

"[I]nherent in any good-faith analysis under the third prong of the *Brunner* test is whether and the extent to which the debtor actually made any voluntary payments on the obligation." *Grant*, 398 B.R. at 213 (citing *Morrow v. U.S. Dep't of Educ.* (*In re Morrow*), 366 B.R. 774, 779 (Bankr. N.D. Ohio 2007)). Similarly, participation in an income sensitive repayment program, like the ICRP, is "probative of [the debtor's] intent to repay her loans." *Tirch*, 409 F.3d at 682.

Debtors who fail to make voluntary payments or enroll in a repayment program can still prove good faith. To do so, however, they need a probative explanation for their behavior. For example, courts have excused the failure to make voluntary payments if a debtor has applied for or obtained deferments to avoid default. *See Barrett v. Educ. Credit Mgmt. Corp.* (*In re Barrett*), 487 F.3d 353, 365-66 (6th Cir. 2007) (debtor obtained deferments). *See also Cekic-Torres v. Access Grove, Inc.* (*In re Cekic-Torres*), 431 B.R. 785, 795 (Bankr. N.D. Ohio 2010) (debtor obtained a deferment and attempted to obtain an extension of the deferment, but was denied). Likewise, courts have excused the failure to enroll in a repayment program in a number of scenarios. In *Barrett*, the Court of Appeals excused the debtor's non-enrollment based on the debtor's explanation that

13

enrolling in the ICRP could potentially result in burdensome tax liability upon the conclusion of the program. 487 F.3d at 365. In *Hertzel*, this court excused a debtor's failure to enroll in the ICRP where the debtor "was told she could not qualify . . . because her loans were in default" and "[d]ebtor was not given any assistance or information on how to make herself eligible for the program." 329 B.R. at 234.

None of these explanations in the above cases are applicable to the Debtor. The Debtor has gone almost two decades without obtaining or applying for deferments. Tax liability should be no concern to her: the USDOE has offered her a discharge of any tax liability that may arise at the end of the repayment program. Her rationale for refusing to participate in the ICRP is that it would harm her ability to obtain credit, but this excuse is "insufficient for rejecting a program that would allow [the Debtor] to fulfill her loan obligations in a more reasonable and manageable way." *Robinson v. Educ. Credit Mgmt. Corp.* (*In re Robinson*), 416 B.R. 275, 282 (Bankr. E.D. Va. 2009).

The Debtor cites cases in which courts refused to force debtors into repayment programs on the grounds that participation would be futile or meaningless. Indeed, in a number of cases, courts concluded that the debtor's circumstances were so desperate that participation in a repayment program would fail to result in "any meaningful repayment of the debt." *Balaski v. Educ. Credit Mgmt. Corp.* (*In re Balaski*), 280 B.R. 395, 400 (Bankr. N.D. Ohio 2002). *See also, e.g.*, *Roth v. Educ. Credit Mgmt. Corp.* (*In re Roth)*, 490 B.R. 908, 919-20 (B.A.P. 9th Cir. 2013) ("Given [debtor's monthly plan payment of zero, and likelihood that payment would never increase], we conclude that [d]ebtor's refusal to participate in the IBRP should not be weighed against her . . . ."). But in these cases, courts deciding the good faith question had already concluded that the debtors had satisfied the second "additional circumstances" prong of the *Brunner* test; the debtors had proven that their circumstances were highly unlikely to ever improve. This case presents the opposite scenario: The Debtor has failed the second *Brunner* prong and thus, at least in the view of the Bankruptcy Code as interpreted in this circuit, she can still hope for improved income and meaningful repayment in the future.

14

Given the Debtor's failure to make voluntary payments, enroll in the ICRP, or satisfy the additional circumstances prong of the *Brunner* test, the Panel will affirm the Bankruptcy Court's conclusion that the Debtor failed to prove that she made a good faith effort to repay her student loans.[5]

## CONCLUSION

Based on the foregoing, Panel AFFIRMS the Bankruptcy Court's judgment and order determining the Debtor's student loans to be non-dischargeable.

---

[5]The Debtor also complains that the Bankruptcy Court erred when it stated that her ICRP calculations, contained in her Exhibit 20, were not probative of what her payments would be if she were to enroll in the program. It is unclear based on the record whether Exhibit 20 was actually admitted, because the Debtor did not provide a trial transcript, but, regardless, it does not assist the Debtor. Exhibit 20 consists of some notes by the Debtor and screen shots of the repayment plan calculators located at the government student aid website. (http://studentaid.gov/repay-loans/understand/plans). The Bankruptcy Court considered this evidence and found it not probative. Admissions of evidence and determinations of relevancy are reviewed for an abuse of discretion. *United States v. Phillips*, 888 F.2d 38, 40-41 (6th Cir.1989). In order for a future monthly ICRP payment calculation to be accurate, there must first be an accurate determination of the Debtor's income going forward. Unfortunately, this first step did not occur. The Debtor based her ICRP calculations on income from a thirty-two hour work week that at least one of her doctors described as a temporary restriction. The Court had already concluded in its "additional circumstances" analysis that the Debtor might improve her financial condition in the future. Given the uncertainty about her income going forward, the Bankruptcy Court's statement with regard to the Debtor's ICRP calculations was not clear error or an abuse of discretion.